UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| UNION INSURANCE COMPANY, | } |
| Plaintiff, | } |
| v. | } Case No.: 7:12-cv-04072-RDP-TMP |
| BLAKENEY PALMER CO., LLC., | } |
| Defendant. | } |

**MEMORANDUM OPINION**

Plaintiff, Union Insurance Company ("Plaintiff"/Counter-Defendant), and Defendant, Blakeney Palmer Co. L.L.C., ("Defendant" or "Counter-Plaintiff") have both moved for summary judgment on Plaintiff's fraud claim. (Docs. # 83 and 87). After careful review, the court concludes that there are material issues of fact that preclude a grant of summary judgment for either party.

**I.    Introduction**

This case presents an insurance dispute. Plaintiff insured Defendant's apartment complex, University Village, which was damaged in the April 27, 2011 tornado in Tuscaloosa, Alabama. Defendant made a claim under the policy for repairs, lost rents, and depreciation. Plaintiff paid the claim in the amount of $877,682.09 and Defendant represented that it had made repairs.

Defendant later submitted a claim ostensibly for additional damage incurred in the April 27, 2011 tornado in the amount of $2,292,753.84. Defendant asserts that its initial claim was only for a portion of "necessary" repairs sufficient to enable it to rent the apartments, and that it

always contemplated undertaking more extensive repairs.  Plaintiff's position is that it understood that the initial claim was to repair *all* of the damage caused by the tornado.

Plaintiff investigated and eventually refused to pay the supplemental claim.  It thereafter filed this declaratory judgment action seeking to void the policy under its terms and under Alabama Code Section 27-14-28 due to Defendant's alleged fraud.  Plaintiff asserts that, in investigating Defendant's supplemental claim, it discovered, among other things, that Defendant had not made all of the repairs that were the basis for the initial claim it had previously paid.  Therefore, Plaintiff asserts that Defendant made intentional, material misrepresentations in relation to its initial claim.  Plaintiff also asserts that the damage sought to be repaired under the supplemental claim was not the result of wind or tornado damage and is not covered by the policy.  (Doc. # 1).

## II.     Relevant Undisputed Facts

Plaintiff insured Defendant's apartment complex, University Village, located in Tuscaloosa, Alabama, which suffered damage during a tornado on April 27, 2011.  (Docs. # 1, 17).  Defendant made a claim under its policy with Plaintiff related to the tornado damage.  (Doc. # 1).  The policy provides in relevant part:

> **A. Concealment, Misrepresentation or Fraud**
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
>     1. This Coverage Part;
>     2. The Covered Property;
>     3. Your interest in the Covered Property; or
>     4. A claim under this Coverage Part.

(Doc. # 90-2 at p. 79 (Bates No. 0078)).

Union assigned an adjuster, Mickey Carney, to the claim, and Carney obtained three estimates for the repairs to University Village. (Doc. # 84-1). The estimate from Blakeney Company was the lowest. (Doc. # 84-1). Blakeney Company is a separate entity from Blakeney Palmer.[1]

Blakeney Company's initial estimate of $465,750.00 included as the first repair item "Replace all damaged fencing & all damaged gates." (Doc. # 90-8). After being told that the fencing and gates were not covered, Blakeney Company submitted a revised estimate removing the line item for fencing and gates, but the estimate remained $465,750.00. (Doc. # 96-2; Doc. # 84-3 at p. 108-9). Billy Blakeney explained in his deposition that the amount of money estimated for the work did not change because "the fence had to be replaced. Y'all just said you weren't – Your client said they weren't going to pay for it. … But I needed to get paid for it." (Doc. # 84-3 at 108-9).

Both the initial and revised estimates state that "Blakeney Company proposes to make all necessary repairs and furnish all labor, materials and equipment for a lump sum of $465,750.00." (Doc. # 84-2; Doc. # 90-8). Blakeney walked the property, but used the other estimates and scopes of work to prepare his estimate. (Doc. # 90-8 at pp. 84-90)

In connection with the claim, Defendant submitted to Plaintiff at least two Sworn Statements in Proof of Loss to Plaintiff: one for an advance payment of $50,000 which contains the handwritten note "Partial" next to the title "Sworn Statements in Proof of Loss"; and another without any such notation for a payment of $289,105.15. (Docs. # 90-10 at pp. 14-19). As of July 29, 2011, Plaintiff had paid Defendant $452,740.09 for damage repairs to University

---

[1] Defendant Blakeney Palmer is owned by Billy Blakeney and Todd Palmer. (Doc. # 84-4 at p. 20). Blakeney Company is solely owned by Billy Blakeney. (Doc. # 84-3 at p. 13-14).

3

Village, $12,408.00 for business personal property, and $294,313.59 for business income loss and extra expense. (Doc. # 90-10 at pp. 6-13).

After making payments on the Proofs of Loss and other items, on July 29, 2011, Plaintiff wrote Defendant and explained that, as part of its claim, Defendant had funds available for recoverable depreciation "once you have completed the repairs to the property and replaced business personal property." (Doc. # 90-10 at pp. 6-13).

Blakeney Company submitted a Statement to Defendant dated August 18, 2011, which stated that it had "completed all storm repairs and makes final request for $465.750.00." (Doc. # 84-6). Carney, the adjuster, requested this document on behalf of Plaintiff to enable Defendant to receive approximately $69,000 in holdback money. (Doc. # 84-8 at pp. 97-99). Defendant submitted a "Statement as to Full Cost of Repair or Replacement" containing a "supplemental claim" for "applicable depreciation" in the amount of $69,035.47. (Doc. # 9-10 at p. 15).

Carney expected the work done by Blakeney Company under the initial claim to "totally repair the buildings." (Doc. # 84-8 at 103-4). However, Defendant believed that there was additional property damage from the tornado that needed to be repaired. (Doc. # 84-4 at pp. 69-72). Therefore, on December 6, 2011, Defendant made a supplemental claim in the amount of $2,292,753.84 and, together with its supplemental claim, made a demand to invoke the policy's appraisal process. (Doc. # 90-12 at 2).

On December 12, 2011, Plaintiff responded that it had already indemnified Defendant for repairs to University Village based on Blakeney Company's estimate, and Plaintiff requested information on the items Defendant disputed and sought appraisal. (Doc. # 90-13 at pp. 6-9). On April 17, 2012, Defendant wrote to Plaintiff and provided a CD containing a 3,400-page estimate of additional damages it claimed were in dispute. (Doc. # 90-14 at 96).

Because of the extent of additional damages claimed, Plaintiff employed an engineer to inspect the property. (Doc. # 84-9). After investigating Defendant's supplemental claim, Plaintiff's engineers reported to Plaintiff their conclusions (1) that they were not able to identify any tornado related damages in the supplemental $2,292,753.84 estimate; (2) that they could not identify any other covered losses in the $2,292,753.84 estimate; and (3) that some of the repairs which were the subject of Defendant's initial repair estimate had not been made. (Doc. # 84-9). Plaintiff's engineers also reported that the value of what had previously been repaired was only $371,000. (Doc. # 90-14 at pp. 190, 151-52).

After receiving this information, Plaintiff filed its Complaint for Declaratory Judgment which seeks to declare Defendant's policy void and/or that no coverage exists for the supplemental $2,292,753.84 claim due to Defendant's fraud. (Doc. # 1). Both parties have moved for summary judgment on the issue of fraud: Plaintiff arguing that the Rule 56 record demonstrates fraud as a matter of law (Doc. # 88); and Defendant arguing that the Rule 56 record demonstrates there was no fraud as a matter of law (Doc. # 83).

### III.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to

interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by plaintiffs are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

IV.     **Analysis**

Alabama law states that "[n]o misrepresentation in any Proof of Loss under any insurance policy shall defeat or void the policy *unless* such misrepresentation is made with *actual intent to deceive* as to a matter material to the insured's rights under the policy." Ala.Code. § 27–14–28 (emphasis added); *see also EMCASCO Ins. Co. v. Knight,* 2014 WL 5020044 (N.D. Ala. 2014); *Pearson v. Travelers Home & Marine Ins. Co.,* 2014 WL 4681939, * 14 (N.D. Ala. 2014). "[A]ll insurance contracts must be read to include this statutory expression of public policy." *Auto Club Family Insurance Co. v. Mullins*, 2012 WL 6043652, at *7 (N.D. Ala. Nov. 29, 2012) (alteration supplied) (citing *Ex parte State Farm and Casualty Co.*, 523 So.2d 119, 120–21 (Ala.1988)). "[F]or summary judgment to be granted[], this court must find, as a matter of law, that the [insureds] made misrepresentations with an actual intent to deceive." *EMCASCO Ins. Co. v. Knight,* 2014 WL 5020044 (N.D. Ala. 2014). "However, 'a slight exaggeration of the amount of the value of the property destroyed will not defeat the claim entirely.'" *Auto Club Family Insurance Co.*, 2012 WL 6043652 at *7 (citing *Hartford Fire Ins. Co. v. Clark*, 61 So.2d 19, 27 (Ala. 1952)). "'To bar recovery, the overvaluation must be so extravagant as to lead to the conclusion that it was due not to a mistake in judgment but to an intention to defraud.'" *Auto Club Family Insurance Co.*, 2012 WL 6043652 at *7 (citing *Hartford Fire Ins. Co.*, 61 So.2d at 27).

In addition to this provision of Alabama law (which again is read into every policy), Defendants' policy with Plaintiff contains a provision providing that coverage is void if the insured intentionally conceals or misrepresents a material fact concerning a claim. (Doc. # 90-2 at p. 79 (Bates No. 0078)).

Admittedly, the overvaluation asserted by Plaintiff -- in the amount of $2,292,753.84 -- could be considered extravagant under the case law interpreting Section 27–14–28. Plaintiff argues that it is an extravagant overvaluation showing an intent to deceive as a matter of law because Defendant previously represented that all tornado repairs were complete following the initial claim, and then submitted an additional claim for almost $2.3 million. However, Defendant presented an explanation for its supplemental claim which is at least plausible. Defendant's witnesses testified that they never sought to rectify all tornado damage when the initial claim was submitted. Rather, Defendant contends that it (1) merely sought to make "necessary" repairs to the property so that the apartments would be inhabitable for students during the following academic year, and (2) always intended to follow up with a list of more complete repairs following the processing of its initial claim.

To void the policy under § 27–14–28, Plaintiff must present undisputed evidence not only showing that Defendant made a misrepresentation in a Proof of Loss, but also that that misrepresentation was made with an actual intent to deceive. Ala. Code. § 27–14–28. The policy provision regarding "Concealment, Misrepresentation or Fraud" is not limited to Proofs of Loss. Rather, it provides that coverage is void if, at any time, the insured intentionally conceals or misrepresents a material fact concerning a claim. (Doc. # 90-2 at p. 79 (Bates No. 0078)).

The record contains evidence from which a reasonable jury could conclude that Defendant made misrepresentations in connection with the claims under the policy issued by Plaintiff in relation to University Village, and that those representations were intentional. The

court will not comb through the record and discuss all the evidence that supports this Rule 56 conclusion. However, it will provide examples.

First, Blakeney Company submitted an initial estimate for repairs to University Village which included fencing and gates. Thereafter, it provided a revised estimate in the same dollar amount, but which omitted the fencing and gates line item. Defendant's explanation regarding this change of scope but not dollar claims is that, although Plaintiff said it would not pay for fencing and gates, Defendant "needed to get paid for it." (Doc. # 84-3 at 108-9).

Second, the record contains the Blakeney Company Statement dated August 18, 2011, which Defendant provided to Plaintiff, and which stated that Blakeney Company had "completed *all storm repairs and makes final request* for $465.750.00." (Doc. # 84-6) (emphasis added). In light of the $2.3 million supplemental claim and the information from Plaintiff's engineers that the all of the earlier repairs had not been made, a reasonable jury could conclude from this and other record evidence that Defendant made an intentional and material misrepresentation to Plaintiff in stating that all repairs had been completed.

The record also contains evidence that Defendant submitted a "Statement as to Full Cost of Repair or Replacement" containing a "supplemental claim" for "applicable depreciation" in the amount of $69,035.47. (Doc. # 9-10 at p. 15). Plaintiff had previously written to Defendant to explain that recoverable depreciation was available "once you have completed the repairs to the property." (Doc. # 90-10 at pp. 6-13). In light of the $2.3 million supplemental claim and the information from Plaintiff's engineers that the all of the earlier repairs had not been made, a reasonable jury could conclude from this and other record evidence that Defendant made a material misrepresentation to Plaintiff by requesting recoverable depreciation because repairs had not been completed.

Alabama courts, however, have set a high bar for a party (and particularly one who carries the burden of proof) to receive summary judgment when intent is at issue. Generally, a party's intent to deceive is a question more appropriately reserved for a jury. *Hillery v. Allstate Indem. Co.,* 705 F.Supp.2d 1343, 1359–60 (S.D. Ala. 2010); *Murphy v. Droke*, 668 So.2d 513, 517 (Ala. 1995) (holding that even "[w]here the plaintiff presents substantial evidence that the defendant had an intent to deceive, it is for the jury to decide whether the defendant actually had such an intent." (alteration supplied)); *State Farm Mutual Automotive Insurance Co. v. Borden*, 371 So.2d 28, 30 (Ala. 1979) ("Whether specific conduct constitutes an intent to deceive is a jury question .") (citing *Metropolitan Life Insurance Co. v. James*, 191 So. 352 (Ala. 1939)). "Alabama law clearly provides that a determination of a party's intent to deceive is a question more appropriately reserved for the jury." *EMCASCO Ins. Co. v. Knight,* 2014 WL 5020044 (N.D. Ala. 2014) (citing *Murphy*, 688 So.2d at 517).

On the other hand, there is evidence in the record that could be viewed by a reasonable trier of fact and which would support a finding that there was no intentional fraud in this case. Again, the court will not detail all of this evidence. However, and as an example, there is evidence -- albeit, disputed evidence -- in the record from which a trier of fact could conclude that: (1) the initial claim was filed for the purpose of allowing Defendant to obtain a certificate of occupancy and house students during the upcoming academic year; (2) there were special circumstances here because the subject apartments catered to university students, and that unique market had rental cycles from August 1 through July 31 which necessitated a supplemental claim after initial work was done on the apartment complex; (3) Plaintiff's adjuster, Mickey Carney, purportedly understood there would be supplemental claims going forward; (4) the work proposal was done by Blakeney Company and was put together quickly because of the exigencies of the circumstances; and (5) the repairs done under the initial claim were at times

referred to as "temporary." Again, these facts are disputed. But that is the point. There are factual disputes for a jury to resolve. That is how Rule 56 works.

Both § 27–14–28 and the policy provision under which Plaintiff seeks to void coverage require that any fraud be intentional. The court's review of the Rule 56 record reveals that there remain genuine issues of material fact as to whether any asserted misrepresentations were intentional and/or made with an actual intent to deceive.

## V.     Conclusion

For the foregoing reasons, the parties' cross motions for summary judgment on the issue of fraud (Docs. # 83 and 87) are due to be denied.

A separate order will be entered.

**DONE** and **ORDERED** this December 12, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE