UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **UNION INSURANCE COMPANY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 7:12-cv-04072-RDP-TMP |
| } | |
| **BLAKENEY PALMER CO., LLC.,** } | |
| } | |
| **Defendant.** } | |

### SUPPLEMENTAL MEMORANDUM OPINION

In the court's December 12, 2014 Memorandum Opinion, the court did not rule on the section of Plaintiff Union Insurance Company's Motion for Summary Judgment (Doc. # 87) which argues that Union is entitled to summary judgment on Blakeney Palmer's bad faith counterclaim (*see* Doc. # 55). The court now addresses that issue.

**I.    Relevant Undisputed Facts**

Union insured Defendant's apartment complex, University Village, located in Tuscaloosa, Alabama, which suffered damage during a tornado on April 27, 2011. (Docs. # 1, 17). Defendant made a claim under its policy with Plaintiff related to the tornado damage. (Doc. # 1). The policy provides in relevant part:

> A.    Concealment, Misrepresentation or Fraud
>
> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.

(Doc. # 90-2 at p. 79 (Bates No. 0078)).

Union assigned an adjuster, Mickey Carney, to the claim, and Carney obtained three estimates for the repairs to University Village. (Doc. # 84-1). The estimate from Blakeney Company was the lowest. (Doc. # 84-1). Both the initial and revised estimates received from Blakeney Company state that "Blakeney Company proposes to make all necessary repairs and furnish all labor, materials and equipment for a lump sum of $465,750.00." (Doc. # 84-2; Doc. # 90-8).

As of July 29, 2011, Union had paid Blakeney Palmer $452,740.09 for damage repairs to University Village, $12,408.00 for business personal property, and $294,313.59 for business income loss and extra expense. (Doc. # 90-10 at pp. 6-13).

After making payments on the Proofs of Loss and other items, on July 29, 2011, Union wrote to Blakeney Palmer and explained that, as part of its claim, Blakeney Palmer had funds available for recoverable depreciation "once you have completed the repairs to the property and replaced business personal property." (Doc. # 90-10 at pp. 6-13).

Blakeney Company submitted a Statement to Blakeney Palmer dated August 18, 2011, which stated that it had "completed all storm repairs and makes final request for $465.750.00." (Doc. # 84-6). Carney, the adjuster, requested this document on behalf of Union so that Defendant could receive approximately $69,000 in holdback money. (Doc. # 84-8 at pp. 97-99). Defendant submitted a "Statement as to Full Cost of Repair or Replacement" containing a "supplemental claim" for "applicable depreciation" in the amount of $69,035.47. (Doc. # 9-10 at p. 15).

On December 6, 2011, Blakeney Palmer made a supplemental claim in the amount of $2,292,753.84 for repairs to University Village. (Doc. # 90-12 at 2). On December 12, 2011,

Union responded that it had already indemnified Blakeney Palmer for repairs to University Village, but initiated an investigation into the supplemental claim. (Doc. # 90-14 at 96).

Union employed an engineer to inspect the property. (Doc. # 84-9). After investigating Blakeney Palmer's supplemental claim, Union's engineers reported to Union their conclusions (1) that they were not able to identify any tornado related damages in the supplemental $2,292,753.84 estimate; (2) that they could not identify any other covered losses in the $2,292,753.84 estimate; and (3) that some of the repairs which were the subject of Defendant's initial repair estimate had not been made. (Doc. # 84-9). Union's engineers also reported that the value of what had previously been repaired was only $371,000. (Doc. # 90-14 at pp. 190, 151-52).

After receiving this information, Union filed its Complaint for Declaratory Judgment which seeks to declare (1) Defendant's policy void and/or (2) that no coverage exists for the supplemental $2,292,753.84 claim due to Defendant's fraud. (Doc. # 1). Blakeney Palmer responded to Union's Complaint with, among other claims, a counterclaim for bad faith.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the Rule requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to

interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc*. teaches, Rule 56(c) "does not allow the plaintiff to simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof of trial, he must come forward with at least some evidence to support each element essential to his case at trial." *Anderson*, 477 U.S. at 252. "Mere allegations" made by plaintiffs are insufficient. *Id.*

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co*., 243 F. Supp.2d 1257, 1262 (D.Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so onesided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp.2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc*., 62 F. Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.    Analysis

A party asserting a bad faith claim has the burden of proving the following:

(a)     an insurance contract between the parties and a breach thereof by the insurer;

(b)     an intentional refusal to pay the insured's claim;

(c)     the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d)     the insurer's actual knowledge of the absence of any legitimate or arguable reason; and

(e)     if the intentional failure to determine the existence of a lawful basis is relied upon, the insured must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Ex parte Alfa Mut. Ins. Co*., 799 So.2d 957, 962 (Ala. 2001); *National Security Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982); *Cool Temp, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 148 So.3d 448, 454-55 (Ala.Civ.App. 2013)

The third element of the tort of bad faith requires proof of the absence of legitimate reason for denying the claim. '[I]f a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *State Farm Fire and Cas. Co. v. Brechbill*, 144 So.3d 248, 258 (Ala. 2013) (quoting *Gulf Atlantic Life Ins.*

5

*Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981)). Furthermore, the Alabama Supreme Court has held that, where the "[insurer's] investigation established a legitimate or arguable reason for refusing to pay [the insured]'s claim, [that] is all that is required." *Weaver v. Allstate Insurance Co.*, 574 So.2d 771, 774 (Ala. 1990); *see also Bowers v. State Farm Mut. Auto. Ins. Co.*, 460 So.2d 1288, 1290 (Ala. 1984) ("[W]here a legitimate dispute exists as to liability, ... a tort action for bad faith refusal to pay a contractual claim will not lie.").

Here, prior to making its supplemental claim, Blakeney Palmer was told that it could request payment of recoverable depreciation once the repairs to the property were completed. (Doc. # 90-10 at pp. 6-13). Blakeney Palmer submitted a statement to Union that it had "completed all storm repairs" (Doc. # 84-6) and made a claim for the depreciation payment. (Doc. # 9-10 at p. 15). Based on this undisputed evidence, Union had at least an arguable reason to deny Blakeney Palmer's supplemental claim.

In addition, Union hired engineers to investigate the supplemental claim. Those engineers reported (1) that they were not able to identify any tornado related damages in the supplemental $2,292,753.84 estimate; (2) that they could not identify any other covered losses in the $2,292,753.84 estimate; and (3) that some of the repairs which were the subject of Blakeney Palmer's initial repair claim had not been made. (Doc. # 84-9). Union's engineers also reported that the value of what had previously been repaired was less than it had paid for the repairs. (Doc. # 90-14 at pp. 190, 151-52). Thus, Union's investigation revealed additional (at least debatable) reasons to deny the supplemental claim.

Based on the record before the court, Blakeney Palmer has not presented substantial evidence to establish the third element of its bad faith counterclaim - the absence of any reasonably legitimate or arguable reason for that refusal to pay the supplemental claim. The record establishes multiple reasons that are at least arguable to deny the supplemental claim: (1)

6

Blakeney Palmer had already represented to Union that it had "completed all storm repairs" in order to receive the depreciation payment; (2) Union's engineers did not identify any tornado related damages or covered losses in the supplemental claim; and (3) some of the repairs -- which were the subject of Defendant's initial repair estimate (and Union's payments to Defendant based upon that initial claim) -- had not been made, and the value of what had previously been repaired was less than what Union had already paid.  (Doc. # 84-9; Doc. # 90-14 at pp. 190, 151-52).  Therefore, Union is entitled to summary judgment on Blakeney Palmer's bad faith counterclaim.

### IV.    Conclusion

For the foregoing reasons, Union's motions for summary judgment on Blakeney Palmer's bad faith claim (Doc. # 87) is due to be granted.

A separate order will be entered.

**DONE** and **ORDERED** this January 15, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE