UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

UNION INSURANCE COMPANY,        }
                                }
    Plaintiff,                  }
                                }
v.                              }   Case No.: 7:12-cv-04072-RDP-TMP
                                }
BLAKENEY PALMER CO., LLC.,      }
                                }
    Defendant.                  }

### MEMORANDUM OPINION

This matter is before the court on various Motions to Exclude Experts filed by both parties to this case. (Docs. # 110, 111, 114 – 117). The Motions have been fully briefed. (Docs. # 120 – 136).

**I.  Background**

This case involves an insurance dispute. Plaintiff Union Insurance Company insured Blakeney Palmer Co., LLC's apartment complex, University Village, which was damaged in the April 27, 2011 tornado in Tuscaloosa, Alabama. Blakeney Palmer made a claim under the policy for repairs, lost rents, and depreciation. Union paid the claim in the amount of $877,682.09 and Blakeney Palmer represented that it had made the required repairs.

Blakeney Palmer later submitted a supplemental claim, ostensibly for additional damage incurred in the April 27, 2011 tornado, in the amount of $2,292,753.84. Blakeney Palmer asserts that its initial claim was only for a portion of "necessary" repairs sufficient to enable it to rent the apartments, and that it always contemplated undertaking more extensive repairs. Plaintiff's position is that it understood that the initial claim was to repair *all* of the damage caused by the tornado.

Union investigated the supplemental claim, but eventually refused to pay it. It thereafter filed this declaratory judgment action seeking a declaration (1) that the policy is void under its terms and under Alabama Code Section 27-14-28 due to Blakeney Palmer's alleged fraud, and/or (2) that no coverage exists for the supplemental $2,292,753.84 claim due to Blakeney Palmer's fraud. (Doc. # 1). Union asserts that, in investigating Blakeney Palmer's supplemental claim, it discovered, among other things, that Blakeney Palmer had not made all of the repairs that were the basis for the initial claim it had previously paid. Therefore, Union asserts that Blakeney Palmer made intentional, material misrepresentations in relation to its initial claim. Union also asserts that the damage sought to be repaired under the supplemental claim was not the result of wind or tornado damage and is not covered by the policy. (Doc. # 1).

Blakeney Palmer responded to Union's Complaint by asserting certain counter-claims, including ones for breach of contract and abuse of process. Blakeney Palmer also asserted a bad faith claim which this court previously dismissed.

The parties have retained a bevy of experts. Union has designated five experts: Paul R. Williams, H. Brett O'Steen, Mark N. Henry, Dwight M. Richardson, Jr., and Thomas A. Woodall. Blakeney Palmer has moved to strike the testimony of Henry and Woodall. Blakeney Palmer has designated seven experts: Billy Blakeney, Charles W. Howarth, Neill B. Hall, Howard White, Al Cabaniss, and Richard E. Smith. Union has moved to strike the testimony of Howarth, Hall, Smith, and Cook.

**II.     Standard of Review**

The following standards apply to all of the pending Motions.

    **A.     *Daubert* and Rule 702**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, along with *Daubert* and its progeny. Rule 702 provides for the admission of expert testimony

when "scientific, technical, or other specialized knowledge will assist the trier of fact." In *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993), the Supreme Court held that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable. "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." *Dhillon v. Crown Controls Corporation*, 269 F.3d 865, 869 (7th Cir. 2001); *see also U.S. v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[1]

Accordingly, under Rule 702, "this [c]ourt has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts." *Whatley v. Merit Distribution Services*, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

Although the inquiry is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95; *see McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (recognizing a trial judge "should meticulously focus on the expert's principles and methodology, and not on the conclusions that

---

[1] Rule 702 was amended in 2011. According to the Advisory Committee Notes (2011 Amendments) to Rule 702, "[t]he language of Rule 702 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

they generate"). "But conclusions and methodology are not entirely distinct from one another"; neither *Daubert,* nor Federal Rule of Evidence 702, requires a trial judge "to admit opinion evidence that is connected to existing data only by the *ipse dixit*[2] of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

To aid in determining reliability under Rule 702, courts look to the non-exclusive factors set forth in *Daubert*:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

*United Fire & Cas. Co. v. Whirlpool Corp*., 704 F.3d 1338, 1341 (11th Cir. 2013) (citing *Daubert*, 509 U.S. at 592–95); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999) ("[*Daubert's*] list of factors was meant to be helpful, not definitive."). Under *Daubert*, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments) (citations omitted). The notes to Rule 702 make clear that "[n]othing in [Rule 702] is intended to suggest that experience alone -- or experience in conjunction with other knowledge, skill, training or education -- may not provide a sufficient foundation for expert testimony." *Id.* The Rule "expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* But, "[a]s gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in

---

[2] From the Latin, this phrase is translated "he himself said it." An *ipse dixit* statement is one which is unsupported and rests solely on the authority of the individual who makes it. *See* http://thelawdictionary.org.

4

issue.'" *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994)). An expert's failure to satisfy any of the four reliability factors recognized in *Daubert* is sufficient to preclude the testimony of a causation expert from testifying at trial. *Daubert*, 509 U.S. at 593–94.

The court's gatekeeping obligation requires that it evaluate a proposed expert's qualifications in light of what is necessary to explain a particular subject matter to the jury. Whether a *Daubert* hearing is necessary is a decision committed to the trial court's sound discretion. *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005). "As we have explained previously, *Daubert* hearings are not required, but may be helpful in complicated cases involving multiple expert witnesses." *Id.* (internal quotes omitted).

**III.   Discussion**

As already noted, the parties have challenged a number of designated expert witnesses in their Motions to Strike or Exclude. The court addresses each of these requests for relief below.

**A.   Mark. N. Henry**

Union describes Henry and his proposed testimony as follows:

> Henry is a Certified Public Accountant and also certified in Financial Forensics. He [is proffered to] testify regarding his financial analysis of the Blakeney Palmer's assets, liabilities, income, spending and transactions; the financial condition of the Blakeney Palmer; and the extent of the actual business income loss, rental value claims, and extra expense incurred, if any, by the Blakeney Palmer as a result of the April, 2011 tornado.

(Doc. # 109 at 2).

Blakeney Palmer seeks to exclude Henry's testimony not because of any deficiency in his qualifications, but rather because of the relevance, or lack thereof, of the proposed testimony and the untimely nature of his supplemental report. (Doc. # 110 at 2). Blakeney Palmer also argues that Henry's opinions are irrelevant because it has not made any claim in this case for loss of business income or loss of rents. (Doc. # 110-3). Union asserts that Henry's testimony is relevant to the issue of Blakeney Palmer's motive for its alleged misrepresentations. (Doc. # 130 at 2).

In ruling on the parties' cross motions for summary judgment on the issue of fraud, the court concluded that "genuine issues of material fact [remain] as to whether any asserted misrepresentations were intentional and/or made with an actual intent to deceive." (Doc. # 103 at 11). Testimony regarding a motive for any alleged misrepresentations is relevant to the issue of whether any misrepresentations were "intentional and/or made with an actual intent to deceive." The court is mindful, however, that Henry is a CPA. Therefore, the court will allow his proposed testimony as to Blakeney Palmer's accounting and financial condition because it is within his expertise and relevant. Nothing about his qualifications indicates that he is in any way competent to testify about what repairs were properly subject to coverage under the policy at issue, about whether costs were reasonable, or about whether any particular repairs were necessitated by damage caused by the April 27 tornado. Therefore, his testimony on these issues will be excluded. That is, if offered, Henry's testimony will be limited to Blakeney Palmer's financial condition, accounting, and possible motive for any misrepresentations.

Accordingly, the Motion to Exclude Henry (Doc. # 110) is due to be granted in part and denied in part.

   **B.**  **Thomas A. Woodall**

Union describes Woodall's proposed testimony as follows:

>Woodall, if called, will testify regarding Chuck Howarth and the Howarth Group's actual relationship with Blakeney Palmer as it relates to this claim and as to the problems resulting from public adjusters' involvement in insurance claims here in Alabama.

(Doc. # 109 at 3). More specifically, Woodall has presented his opinion that Howarth was acting as a public adjuster in this action on behalf of Blakeney Palmer and in violation of Alabama law. (Doc. # 122-3 at 2). Woodall further opines that Howarth was engaged in the unauthorized practice of law. (Doc. # 122-3 at 3).

Blakeney Palmer seeks to exclude Woodall's testimony because it is not based on sufficient facts or data and argues that the court does not need to be told the law. (Doc. # 111). Union responds that it will call Woodall only if its Motion to exclude Howarth's testimony is denied and if Blakeney Palmer's expert Richard Smith is allowed to testify about Howarth's involvement in Blakeney Palmer's supplemental claim. (Doc. # 129).

Whether Howarth was acting as a public adjuster in violation of Alabama law, or engaging in the unauthorized practice of law, is completely irrelevant to the issues in this case. Presentation of such evidence would do nothing but unnecessarily complicate and lengthen the trial and confuse the jury. It appears that the parties plan to hold a mini-trial on the propriety of Howarth's actions because Blakeney Palmer proposes to have another local lawyer, Richard Smith, testify that Howarth did nothing improper. (Doc. # 109 at 8). Therefore, even if this evidence were relevant, it is due to be excluded under Federal Rule of Evidence 403 because any minimal probative value it might have is substantially outweighed by a danger of confusion and undue delay.[3]

For these reasons, the Motion to Exclude Woodall (Doc. # 111) is due to be granted.

---

[3] To the extent that Union proposes to use Woodall's proposed testimony to establish bias, the factual evidence that Howarth was to be paid an additional fee only if his services attained an additional payment of behalf of Blakeney Palmer is sufficient for that purpose and admissible through Howarth or a representative of Blakeney Palmer.

### C. Richard E. Smith

Blakeney Palmer describes Smith's proposed testimony as follows:

> Mr. Smith will testify that Union improperly declined to submit to the appraisal process, that Union alleged that its insured, Blakeney Palmer, committed fraud without justification to do so. If required to do so, he will opine that Chuck Howarth and the Howarth Group do not practice law, nor did they do anything improper in their efforts to resolve the insured's claim issues. The insurance policy in question had an appraisal provision, and Howarth attempted to comply with the policy, but Union did not. Mr. Smith will also testify, if required to do so, that Blakeney Company had a right to hire the Howarth Group exactly as it did, and the Howarth Group's appraisal contract was proper in all respects.

(Doc. # 109 at 8).

As to whether Union improperly declined to submit to the appraisal process, this court has already denied Blakeney Palmer's Motion to Enforce Appraisal Provisions of an Insurance Policy. (Doc. # 16). More specifically, the court held:

> that "questions of coverage and liability" are "beyond the scope of an appraiser's authority." (Doc. # 9 at 7) (citing *Rogers v. State Farm Fire & Casualty Co.*, 984 So.2d 382, 392 (Ala. 2007)). Blakeney Palmer may, in the end, be entitled to submit its supplemental claim to an appraiser. But first, Union is entitled to have its claim for declaratory relief heard.

(Doc. # 16 at 3). Blakeney Palmer is free to disagree with the court's decision on this issue; however, that must be done by filing an appeal, not by calling an expert to testify at trial. Smith's legal opinions in this regard will not help the jury decide the issues remaining in the case.

The court acknowledges that Blakeney Palmer wholly dismisses Union's fraud contention. But, as the court has already ruled, there are genuine issues of material fact as to whether any asserted misrepresentations by Blakeney Palmer were intentional and/or made with an actual intent to deceive. Only a jury can resolve issues of disputed fact, and "courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law." *United States v.*

8

*Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) (citing *Huff v. United States*, 273 F.2d 56 (5th Cir. 1959)). Here, Smith's opinion that Union was without justification to assert that Blakeney Palmer committed fraud will not assist the trier of fact because it is the role of the judge, and not an expert witness, to instruct the jury on the applicable principles of law. As the Eleventh Circuit has stated, "'Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact.'" *United States v. House*, 684 F.3d 1173, 1209 (11th Cir. 2012) (quoting *United States v. Oliveros*, 275 F.3d 1299, 1306–07 (11th Cir. 2001)). It follows, therefore, that "[a]n expert may not ... merely tell the jury what result to reach," and "[a] witness also may not testify to the legal implications of conduct." *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citations omitted, alterations supplied). Instead, "the court must be the jury's only source of law." *Id.* (citations omitted).

Finally, as already discussed above, Smith's proposed testimony that Blakeney Palmer's proposed expert Howarth did not violate any Alabama law or statute by his participation in this case is completely irrelevant to the issues in this case. Allowing this testimony would unnecessarily complicate and lengthen the trial and confuse the jury, and it is due to be excluded under Federal Rule of Evidence 403.

For these reasons, the Motion to Exclude Smith (Doc. # 116) is due to be granted.

**D.     Charles W. Howarth**

Blakeney Palmer describes Howarth's proposed testimony as follows:

> Mr. Howarth is an insurance consultant, appraiser and adjuster with over thirty-five (35) years of insurance claims experience. He has trained many insurance adjusters about the claims process and the duty of good faith. He performed inspections of University Village in 2011 and 2012 for the supplemental claim, and again visited the premises in 2013 and March 2014. Mr. Howarth's inspection of University Village included inspecting the roofs, interiors and exteriors of all apartment buildings on the property, as well as the clubhouse. Mr. Howarth will

9

testify concerning his observations and opinions formed during his inspections of University Village and the costs to repair damages. Further, Mr. Howarth may also respond to any other testimony provided in his area of expertise, including any testimony offered by Union Insurance Company or its experts. Mr. Howarth prepared a report of his observations of University Village. That report has been previously produced in this litigation as a Rule 26 expert disclosure. Mr. Howarth also will testify that his appraisal request should have been honored and that Union did not properly follow its policy, including the appraisal provisions in the policy. In the event that Union's fraud allegations are allowed to be tried, Mr. Howarth will give opinions consistent with his deposition testimony, that Blakeney Palmer's assertions were supported by the evidence.

(Doc. # 109 at 5-6).

Union argues that Howarth's testimony is due to be excluded for three reasons: (1) Howarth should be precluded from testifying because he was engaging in the unauthorized practice of law; (2) his testimony lacks analytical substance and is speculative; and (3) the contingency fee arrangement raises questions about his reliability. (Doc. # 114).

As discussed above, whether Howarth was engaged in the unauthorized practice of law is simply not an issue for the jury in this case. But evidence regarding the contingent nature of a portion of his "expert" compensation is relevant to his credibility. Of course, credibility issues go to the weight to be afforded his testimony, not its admissibility.

As to the purported speculative nature of Howarth's testimony, under *Daubert*, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R.Evid. 702 Advisory Committee's Notes (2000 Amendments) (citations omitted). The notes to Rule 702 make clear that "[n]othing in [Rule 702] is intended to suggest that experience alone -- or experience in conjunction with other knowledge, skill, training or education -- may not provide a sufficient foundation for expert testimony." *Id*. The Rule "expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id*. Therefore, Howarth will be

allowed to testify regarding his inspection of University Village and his valuation of the damage he observed based on his experience as an adjuster and/or appraiser.

But he will be precluded from testifying as to any good or bad faith because this court has already dismissed Blakeney Palmer's bad faith counterclaim.  In addition, he will be precluded from testifying that his appraisal request should have been honored.  Likewise, he may not provide an opinion on the appraisal provision.  As discussed above, the court has already denied Blakeney Palmer's Motion to Enforce the Appraisal Provision.  (Doc. # 16).

For these reasons, the Motion to Exclude Howarth (Doc. # 114) is due to be granted in part and denied in part.

### E.    Gene Cook

Blakeney Palmer describes Cook's proposed testimony as follows:

> Mr. Cook is a drywall expert with over forty (40) years of experience. He has specialized in new construction, remodeling and repair work for both residential and commercial buildings. Mr. Cook will testify in Blakeney Palmer's case in chief or in rebuttal to expert testimony offered by Union Insurance on the issue of damages and the causation of said damages

(Doc. # 109 at 7-8).

On November 13, 2013, the court issued an Amended Scheduling Order containing the following expert deadlines:

> a.    from Plaintiff relating to the claims in the Complaint by December 10, 2013;
>
> b.    from Defendant/Counterclaim-Plaintiff relating to rebuttal to Plaintiff's expert and relating to counterclaims by February 10, 2014; and
>
> c.    from Plaintiff/Counterclaim-Defendant relating to rebuttal to Defendant/Counterclaim-Plaintiff's expert as to counterclaims by March 10, 2014.

(Doc. # 49).

On February 14, 2014, Blakeney Palmer moved to allow the designation of rebuttal experts as to its counterclaims. (Doc. # 69). The court granted Blakeney Palmer's Motion and stated: "Blakeney may produce a rebuttal expert report relating to any NEW expert information contained in Union's upcoming report due on March 10, 2014, which relates to Blakeney's counterclaims." (Doc. # 70). Thereafter Union filed an unopposed motion to further amend the scheduling order as to expert reports. (Doc. # 71). The court granted the motion and ordered that "Union's expert report regarding Blakeney's counterclaims SHALL be produced on or before March 24, 2014. Blakeney's rebuttal expert to new expert information contained in Union's upcoming report SHALL be produced on or before April 24, 2014." (Doc. # 72).

On March 24, 2014, the only expert designated by Union was Tom Woodall. (Doc. # 78 at 2-3). Woodall, a lawyer, was designated to testify regarding the standard for bad faith in Alabama. (Doc. # 78-2 at 2). Thereafter Blakeney Palmer had been allowed by the court to present a *rebuttal* expert to any *new* expert information contained in the March 24, 2015 report. (Doc. # 72). Instead of designating an expert responsive to the March 24, 2014 Woodall designation, Blakeney Palmer disclosed Gene Cook, a drywall expert. (Doc. # 78-2).

Cook's proposed expert testimony simply is not -- in any conceivable way -- responsive to the designation of Woodall. Blakeney Palmer's belated designation of Cook as an expert violates this court's Orders.[4]

The Federal Rules give discretion to district courts to exclude untimely submissions. Specifically Rule 37(c) states, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

---

[4] Union also argues that Cook's testimony should be excluded because he was previously employed by Union in connection with an inspection of University Village. (Doc. # 78 at 4-5). However, courts have refused adopt a blanket rule against such "side-switching" arrangements, where a party calls an adversary's former expert witness to testify against the adversary. *Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1445 (11th Cir. 1998).

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1) (emphasis added).

Although this court cannot and does not condone Blakeney Palmer's blatant disregard for its orders, the court concludes that admission of Cook's testimony over Union's objection is harmless. Blakeney Palmer is correct that it would be entitled to present factual elements Cook's testimony regardless of his expert designation for impeachment purposes. There is an exception to the general rule that the identity of witnesses must be disclosed early on in a case. If a witness is called "solely" to impeach the testimony of another witness, the party calling the impeaching witness need not have previously disclosed the identity of the impeaching witness. *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1354 (11th Cir. 2004). However, if a witness provides "any substantive testimony" that witness's identity must be previously disclosed. *Id*.

The court has sought to carefully strike the balance as it relates to Cook's testimony. In light of the circumstances of his disclosure as a witness, Cook will be precluded from testifying as an expert. He may testify solely as a fact witness, but solely for impeachment purposes. The court is cognizant of Union's argument that Cook may have been privy to its privileged conversations or information, and the court will further orders *in limine* that counsel **SHALL** be **PROHIBITED** from attempting to elicit any such information, and Cook **SHALL** be **PROHIBITED** from testifying to any such information.

For these reasons, the Motion to Exclude Cook (Doc. # 117) is due to be granted in part and denied in part.

### F.   Neil B. Hall

Blakeney Palmer describes Hall's proposed testimony as follows:

> Dr. Hall is a licensed architect and construction consultant with over thirty-six (36) years of experience. He has investigated literally thousands of storm damage claims. Dr. Hall inspected University Village on January 11, 2012 and again on March 3, and 4, 2014. Dr. Hall will testify that the tornado of April 27, 2011 is responsible for the damage to the roofs/shingles and for the defects at University Village. He will verify that the damages claimed are not from normal wear and tear.

(Doc. # 109 at 6).

Union argues that Hall's opinions are based on an invalid and unreliable methodology, they rely too heavily on the work of another expert (Chuck Howarth), and they should be stricken under *Daubert* and its progeny as speculative. (Doc. # 115). Blakeney Palmer argues that Hall used an appropriate methodology, any reliance on Howarth's report was reasonable, and Hall's testimony will assist the trier of fact. (Doc. # 127). Union does not argue that Hall's qualifications are unsatisfactory in any manner (Doc. # 115), and the record shows he has extensive experience in building damage assessment. (Doc. # 112-1).

Prior to preparing his February 8, 2014 report on damage to the University Village roofs, Hall had only personally inspected the roof of one building. (Doc. # 112-1 at 21-22, 73). Otherwise, he had relied upon the photographs from Chuck Howarth to estimate the number of damaged shingles on the roofs. (Doc. # 112-1 at 42). For some buildings, he had neither inspected the roof, nor had any photographs. (Doc. # 112-1 at 42). In those cases, he averaged the damage based on the information he had on the two nearest buildings on which he did have information. (Doc. # 112-1 at 42).

In preparing his report, Hall reviewed, among other things, the report prepared by Union's expert, HAAG engineering. (Doc. # 112-1 at 74). Although he presumed that they had walked every roof, he did not ask for their photographs or videos. (Doc. # 112-1 at 74-76).

After preparing his report, and just before his deposition, on March 1 and 2, 2014, Hall returned to University Village to inspect the roofs he had not previously walked. (Doc. # 112-1 at 19-20). At his deposition, Hall testified as follows:

> Q: Are you capable – are you capable of performing an analysis to determine how many shingles on a particular slope are damaged?
>
> A: Yes.
>
> Q: I think what you told me, the two reasons you didn't do it; one, you didn't have the time, correct?
>
> A: Yes. The time allotted – you know, you would have to spend an inordinate amount of time. If you were to do it right, you might be up there for at least four days instead of two days, and you might have a team of two or three instead of one to do it, and sketch it out properly and to record each location. … So there was some, I don't want to say necessary, but there was some unavoidable shortcuts to getting out a number, which actually, you know, probably hurt my client's position more than it helped them.
>
> Q: And the second reason you gave me? I'm sorry, I've lost it. The first was time. What was the second?
>
> A. The second was, I was following up on the report done by HAAG Construction. That was the manner in which they chose to do their analysis, so I kept the same methodology.

(Doc. # 112-1 at 91-92).

The question is whether the issues with Hall's methodology or lack thereof, go to the weight or the admissibility of the proffered evidence. "The Eleventh Circuit has held that "[i]ssues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The court finds that Union's arguments focus on the weight and credibility of Hall's proffered evidence rather than its admissibility. Accordingly, Union may have the opportunity to cross-examine Hall in order to test his credibility and opinions in front of the jury.

For these reasons, the Motion to Exclude Hall's testimony (Doc. # 115) is due to be denied.

## IV. Conclusion

A separate order will be entered.

**DONE** and **ORDERED** this September 16, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE